IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 04-53 Erie |
| | ) | |
| LISA MARIE DACUS | ) | |

**POSITION WITH RESPECT TO SENTENCING FACTORS**

AND NOW, comes the defendant, Lisa Marie Dacus, by her attorney, Thomas W. Patton,

Assistant Federal Public Defender, and respectfully files this Position With Respect to Sentencing

Factors.  In support thereof Counsel states:

Paragraph 19

Ms. Dacus objects to not receiving a two-level reduction in her offense level for being a

minor participant pursuant to U.S.S.G. § 3B1.2(b).  While Ms. Dacus certainly participated in the

distribution of crack cocaine, she is undoubtedly less culpable than her co-defendant, Jontee

Russell.  The minor participant reduction focuses on relative culpability, and recognizes that

although several co-defendants may commit a crime, they are not all equally culpable.  The focus

of § 3B1.2(b) is **relative culpability**.

"Whether a defendant is entitled to [a minor role] decrease depends on whether the

defendant's 'involvement, knowledge and culpability' were materially less than other participants."

United States v. Price, 13 F.3d 711, 735 (3rd Cir. 1994) (quoting United States v. Headley, 923 F.2d

1079, 1084 (3rd Cir. 1991)).  This determination "must depend necessarily on such factors as the

nature of the defendant's relationship to other participants, the importance of the defendant's actions

to the success of the venture, and the defendant's awareness of the nature and scope of the criminal

enterprise." Headley, 923 F.2d at 1084 (quoting United States v. Garcia, 920 F.2d 153, 155 (2nd Cir. 1990)).  Also, the Headley factors are not exclusive.  United States v. Rodriguez, 342 F.3d 296, 299 n.3 (3rd Cir. 2003).  "Since § 3B1.2 is ultimately concerned with the defendant's relative culpability, a district court should consider the defendant's conduct under the Headley factors in relation to the other participants."  United States v. Isaza-Zapata, 148 F.3d 236, 239 (3rd Cir. 1998).  Comparing Ms. Dacus' role in the conspiracy to her co-defendant Jontee Russell's reveals the truly minor role Ms. Dacus played.

The sum of Ms. Dacus' involvement in the charged offense was her answering the CI's telephone call and telling the CI to come to the house.  The CI had already set up the purchase of crack cocaine with Russell **prior** to the telephone call.  When the CI came to Ms. Dacus' and Russell's residence, the CI dealt with Russell, not Ms. Dacus.  Indeed, Russell had to be awakened to consummate the drug deal.  If Ms. Dacus and Russell were true partners, or even close to partners, Ms. Dacus could have supplied the crack cocaine to the CI.  The amount and the price had already been set, so all that was left to do when the CI showed up was to weigh out the crack and collect the money.  Ms. Dacus was not authorized to take even these ministerial steps.  Only Russell was allowed to actually weigh and distribute the drugs and collect the money.

The Addendum to the PSR states that the government intends to present evidence at the time of sentencing to establish the extent of Ms. Dacus' participation and knowledge of the nature and scope of Russell's drug dealing.  Since Ms. Dacus knows what that evidence is, she will address that issue now.  Through interviews of Russell and Ms. Dacus, the government learned that Russell was obtaining his cocaine from sources in Flint, Michigan.  Sometimes Ms. Dacus would go with Russell to Flint but sometimes she would not.  On most occasions when Ms. Dacus accompanied

2

Russell to Flint, Ms. Dacus was left at Russell's aunt's house while Russell left to purchase the cocaine. On two or three occasions Ms. Dacus went with Russell to purchase the cocaine but she waited in the car while Russell purchased the cocaine. Ms. Dacus did not know the names of the people from whom Russell was purchasing the cocaine. Most of the time when Ms. Dacus went with Russell to Flint, Russell would have Ms. Dacus hide the cocaine he had purchased in her underwear during the ride home. On other trips Russell would hide the cocaine in the trunk of the car they were driving.

Applying the Headley factors to the facts of this case established that Ms. Dacus is substantially less culpable than Russell. It is painfully obvious that Russell dominated the relationship between himself and Ms. Dacus. Ms. Dacus' tattoos probably say more than anything else about her and Russell's relationship. Ms. Dacus has "TAY," Russell's nickname, tattooed in large block letters on her neck. She has "JONTEE" tattooed on her left arm. And, most tellingly, she has "Jontee's property" tattooed on her right thigh. (PSR ¶ 38). That tattoo says it all.

Ms. Dacus' actions in this case further reveal the extent to which Russell runs her life. Ms. Dacus cooperated with law enforcement and earned a downward departure for that cooperation. What did Ms. Dacus do with that downward departure? She insisted that it be given to Russell. Russell, the man who used Ms. Dacus as a mule for his cocaine so that if he was stopped by police on the way home from Flint with a load of cocaine Ms. Dacus would literally be left holding the bag, had his sentence reduced because Ms. Dacus cooperated and insisted that his sentence be reduced for her cooperation rather than her own sentence being reduced.

The facts of the case also show Russell's dominance in the relationship. Russell was the one with the source in Flint. Russell purchased the cocaine. Russell put the cocaine on Ms. Dacus'

person for the trips home from Flint so she would be the one arrested in they were stopped.  Russell

cooked the cocaine into crack.  Russell set the price for the crack.  Russell actually distributed the

crack and collected the money.

Ms. Dacus' actions were not vital to the success of Russell's crack distribution.  As the

details of the offense discussed above show, Ms. Dacus' actions were not important to the success

of the controlled buy.  Russell and the CI had already agreed to the deal before Ms. Dacus answered

the CI's telephone call.  Had Ms. Dacus not been home the day of the controlled buy it still would

have occurred.  Her presence helped facilitate the consummation of the controlled buy but her

absence would not have prevented it from occurring.  In the broader scope of Russell's drug dealing

Ms. Dacus played a very unimportant role.  Russell could buy cocaine in Flint with or without Ms.

Dacus.  Indeed, Russell would often take trips to Flint without Ms. Dacus.  On the trips Ms. Dacus

did take to Flint her sole purpose was to hide the cocaine in her underwear on the ride home.  Far

from being important to the purchase of cocaine, Ms. Dacus' presence was completely unnecessary

to the purchase of cocaine.  The most Ms. Dacus' presence accomplished was potentially protecting

Russell from arrest if they were stopped and searched by law enforcement on the way from Flint

to Erie.

Ms. Dacus did know the nature and scope of Russell's drug activities.  That fact, however,

does not prevent her from receiving a minor role reduction.  The application notes to § 3B1.2 make

clear that a "defendant's lack of knowledge or understanding of the scope and structure of the

enterprise and of the activities of others is indicative of a role as a **minimal** participant," entitled

to a 4 level reduction in offense level.  U.S.S.G. § 3B1.2, comment. (n.4).  The minor participant

adjustment applies to a defendant "who is less culpable than most other participants, but whose role

could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.5). So, Ms. Dacus' knowledge and understanding of the scope of Russell's drug activities prevents her from receiving a 4 level minimal participant adjustment, however, it does not prevent her from receiving a 2 level reduction for being a minor participant.

At the end of the day, this issue comes down to the fact that Ms. Dacus, while guilty, is less culpable than Russell. Because Ms. Dacus is less culpable than Russell, she is entitled to a minor participant adjustment so that her sentence reflects that fact. Based upon this objection, Ms. Dacus' total offense level should be 19. An offense level of 19 and a criminal history category I result in a guideline imprisonment range of 30-37 months. A sentence of 2 ½ years of imprisonment is enough to punish Ms. Dacus for her role in this offense.

WHEREFORE, defendant, Lisa Marie Dacus, respectfully requests that this Honorable Court impose a sentence of 30 months imprisonment.

Respectfully submitted,

/s/ Thomas W. Patton
Thomas W. Patton
Assistant Federal Public Defender
PA I.D. No. 88653